IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JOSEPH E. POORE,<br>Defendant. | Case No. 09–CR–40003–JPG–3 |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Joseph E. Poore's motions for compassionate release. (ECF Nos. 514–15). For the reasons below, the Court **DENIES** Poore's motions.

I.   PROCEDURAL & FACTUAL HISTORY

A.  The Conviction

In 2010, Poore pleaded guilty to conspiring to manufacture, distribute, and possess with intent to distribute methamphetamine. (Judgment 1, ECF No. 220). The Court sentenced him to a 151-month term of imprisonment. (*Id.* at 2).

Poore was released in February 2016. (Petition for Revocation 1, ECF No. 430). About two months later, he admitted to an officer with the U.S. Probation Office that he used marijuana every three days for the past three weeks. (*Id.*). He again pleaded guilty, and the Court sentenced him to another 36-month term of imprisonment. (Judgment for Revocation 1, 3, ECF No. 457).

Poore was released in May 2018. (Second Petition for Revocation 1, ECF No. 465). About two months later, he admitted to an officer with the U.S. Probation Office that he used marijuana and methamphetamine several times. (*Id.*). He again pleaded guilty, and the Court sentenced him to 12 more months' imprisonment. (Second Judgment for Revocation 1, 3, ECF No. 484).

Poore was released in July 2019. (Third Petition for Revocation 1, ECF No. 490). One month later, he admitted to an officer with the U.S. Probation Office that he used synthetic marijuana, the first time being three days after his release. (*Id.*). He again pleaded guilty, and the Court sentenced him to yet another 21-month term of imprisonment. (Third Judgment for Revocation 1, 3, ECF No. 506). This time, however, the Court did not also impose a term of supervised release. (*See id.*).

Poore is currently incarcerated at Federal Correctional Institution ("FCI") Greenville in Illinois. (Poore's First Mot. for Compassionate Release 1, ECF No. 514).

### B. The Presentence Investigation Report

Before Poore's initial sentencing in 2010, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about the nature and circumstances of the offense and Poore's background. (*See* PSR 1, ECF No. 190).

According to the PSR, Poore—along with 15 others—was involved in a years-long conspiracy to distribute methamphetamine. (*Id.* at 3–4). His job was to steal anhydrous ammonia and pseudoephedrine pills and deliver them to the "cooks." (*Id.* at 5). That said, no one "took on a leadership or supervisory role . . . . All defendants [were] equally culpable." (*Id.* at 7). He also pleaded guilty to at least 11 other crimes before being indicted in this case, including burglary, domestic battery, and escape from custody. (*See id.* at 9–12).

### C. Poore's Motions for Compassionate Release

In 2020, Poore moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Poore's First Mot. for Compassionate Release at 1). He contends that a serious medical condition—"a severe head injury" from 2017 left him with weekly

seizures—makes him especially vulnerable to the COVID-19 virus. (*Id.* at 3). A second motion filed the month after provided more information about his condition and proposed release plan. (Poore's Second Mot. for Compassionate Release 6, 11, ECF No. 515).

The COVID-19 virus, of course, is now a global pandemic. At FCI Greenville, 105 inmates currently have COVID-19; 289 have recovered; and none have died. *Coronavirus*, Bureau of Prisons (last visited Nov. 20, 2020).[1] In brief, Poore argues that his increased risk of experiencing serious complications if he contracts COVID-19 is an *extraordinary and compelling reason* warranting his release. (Poore's First Mot. for Compassionate Release at 1).

## II.  LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing *not only* that he faces an increased from the virus, *but also* that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Poore failed to meet that burden.

### A.  Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

---

[1]  *Available at* https://www.bop.gov/coronavirus.

The § 3553(a) factors include:

    (1)    the nature and circumstances of the offense and the history and characteristic of the defendant;

    (2)    the need for the sentence imposed—

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; and

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    the kinds of sentences available;

    (4)    the kinds of sentence and the sentencing range established for—

        (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

        (B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . .;

    (5)    any pertinent policy statement—

        (A)    issued by the Sentencing Commission . . .; and

        (B)    that . . . is in effect on the date the defendant is sentenced[;]

    (6)    the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). It is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is, or is not, appropriate. *See Shannon*, 518 F.3d at 496.

### B. The § 3553(a) Factors Weigh Against Compassionate Release

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released over 7,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Nov. 20, 2020).[2] Although not bound by any BOP determination, the Court gives BOP some deference in this area "considering [its] statutory role, and its extensive professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. Time and again, Poore has disregarded each Court directive. That he is "sentenced on a revocation that wasn't a new charge" does not work in his favor—it works against him. (Poore's First Mot. for Compassionate Release at 1). The Court cannot in good conscious permit the early release of someone serving a third revocation, the last petition arising from a violation that occurred just three days after his release. With less than six months remaining in his sentence, Poore can take

---

[2] *Available at* https://www.bop.gov/coronavirus/.

this chance to make a commitment to himself and to his community that he will turn over a new leaf. It is never too late to change. That said, even given the COVID-19 virus and the particular threat posed to him, a sentence modification is inappropriate: Poore's continued incarceration remains necessary to promote respect for the law, to emphasize the seriousness of the underlying offense and the violations of supervised release, and to deter further criminal activity from himself and others.

### III.     CONCLUSION

The Court **DENIES** Defendant Joseph E. Poore's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Friday, November 20, 2020**

**S/J. Phil Gilbert**
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
